# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Bizhan Niazi Logistic Services Company | ) ASBCA No. 59205 |
| | ) |
| Under Contract No. W5K9FH-13-D-0001 | ) |

APPEARANCES FOR THE APPELLANT:     Mr. Mohammad Hassan Niazi
                                   President

APPEARANCES FOR THE GOVERNMENT:    Raymond M. Saunders, Esq.
                                   Army Chief Trial Attorney
                                   MAJ Lawrence Gilbert, JA
                                   Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE O'SULLIVAN
## ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Appellant, Bizhan Niazi Logistic Services Company ("BNLS"), filed a notice of appeal seeking compensation and other relief under a contract awarded and performed in Afghanistan. Because no proper Contract Disputes Act claim was filed with the contracting officer (CO), we must dismiss the appeal for lack of jurisdiction.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

On 30 August 2013, the Regional Contracting Center ("RCC"), Camp Leatherneck, Afghanistan, awarded Contract No. W5K9FH-13-D-0001 to BNLS for the lease, operation, and maintenance of non-tactical vehicles (mot., ex. G-2).[1] On 21 November 2013, BNLS emailed the RCC requesting a modification to the contract to reflect what it considered to be tasks required by the government above and beyond the effort set forth in the solicitation (mot., ex. G-1 at 7-8). On 9 December 2013, the RCC responded, also via email, stating that "the customer is not intending on modifying the contract. If there is any work being done that is outside of the current scope of the contract, please cease and desist immediately." (*Id.* at 5)

On 3 March 2014, via email, BNLS renewed its request for a contract modification. Mr. Sayed Idrees Hashemi, BNLS's operations manager, explained in

---

[1] The government has attached two exhibits to its motion to dismiss: Exhibit G-1 consists of the notice of docketing and notice of appeal, paginated consecutively, and Exhibit G-2 is the contract at issue.

the email that BNLS was incurring the cost of extra drivers to provide 24-hour regularly scheduled bus service not called for or priced in the contract. (Mot., ex. G-1 at 14-16) Also mentioned were extra vehicle transportation costs, fuel costs, excessive spare parts costs due to users not turning vehicles in for regularly scheduled maintenance, and additional escort costs for additional shifts (*id.*). Some of the presented costs appear to overlap, and no bottom line claim amount was provided. BNLS also requested "some acknowledgment" of the fact that it lost a vehicle and a driver to a Taliban attack, a loss it attributed to a direction by the original contracting officer representative (COR) to stage all the vehicles in a vulnerable area prior to receiving the Notice to Proceed ("NTP"). The fact that the loss occurred prior to the NTP meant that it was not covered by DBA insurance. (*Id.*)

The RCC acknowledged receipt of this communication the next day. Its email stated:

> [W]e have received your message, explaining your issues, in regards to [the contract]. Our Chief, Deputy Chief and [CO] will carefully review the issues you have listed, and will respond accordingly. We ask that you also submit a letter as to how the additional funds were calculated and why you believe it is a reasonable request, compared to your original submitted proposal.

(Mot., ex. G-1 at 13)

BNLS checked with the RCC several times thereafter on its progress reviewing the "request for modification" (mot., ex. G-1 at 13). The RCC responded that the "adjustments request" would be reviewed over the next several days (*id.* at 12). On 8 March 2014, Mr. Hashemi contacted the CO to ascertain status. She replied that she had not completed her review and would notify him "as soon as it has been completed and a decision has been made." (*Id.* at 11) Shortly thereafter, on 8 March 2014, BNLS sent its notice of appeal to the Board. The appeal was docketed on 11 March 2014. On 12 March 2014, the CO emailed BNLS with her determination. The email stated:

> The information you have submitted does not warrant a modification to subject contract; furthermore, you have not provided any justification for added expenses.

(App. claim, email vol. 4 at 002595)[2]

---

[2] Appellant filed a "claim" and supporting documents with the Board after its appeal was docketed.

In its notice of appeal, BNLS states that its claim is for:

1. A resolution to the loss of life and vehicle to the Taliban-Priceless

2. Unpaid invoices to date of $1,614,900.00 outstanding since September 2013 through February 2014

3. Increases in Costs of $790,600.00

(Ex. G-1 at 3-4) BNLS also mentions that it has requested an increase in payments for vehicles remaining on its second task order, D0002 (*id.*).

On 28 March 2014, the government filed a motion to dismiss for lack of jurisdiction. On 27 May 2014, BNLS filed with the Board its "Claim with Response to the Government['']s Motion to Dismiss" ("Response"). In this document, also labeled as a Complaint, BNLS states that it is seeking "damages for loss of a vehicle and a life due to the Taliban and increases in costs of $1,431,330.00 down to $790,600.00." (Response at 1) In this filing, BNLS withdraws its claim for unpaid invoices due to having received payment, but adds new items, among them restock/return fees due to premature return of vehicles; fuel for generators; changed camp build-out costs;[3] and unamortized transportation costs incurred for early-returned vehicles. (Response at 14-16) BNLS concludes its filing by requesting payment "in the amount between $1,431.330.00 and $790,600.00." BNLS also requests that the Board: (1) "edify the contracting office of the perils of the appearance or practice of human trafficking and the mission of ISAF which is to work shoulder to shoulder and build the capacity of Afghanistan and its people and business firms to stand firm and resolute against oppression of any kind"; and (2) conduct "an inquiry into the request of the COR to stage the vehicles outside the 'old soak lot' prior to the NTP, which unfortunately resulted in the death of a BNLS relay driver and was not under the auspice of the DBA insurance due to the Lack of the Notice to Proceed." (*Id.* at 18)

---

[3] The amount of $280,000 was listed as the cost of building the camp in BNLS's 3 March 2014 submission to the RCC (mot., ex. 1 at 15). In its later filing with the Board, BNLS stated the "market rate" to build the camp "would have been over $270,000" but that it was able to build the camp for only $91,970, "up to $70,000" of which is now claimed (response at 15).

3

DECISION

Under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7103 *et seq.*, our jurisdiction is dependent on the submission of a written claim to the CO, followed by a written CO's final decision on the claim or circumstances that permit a "deemed denial." Additionally, to the extent the claimed amount exceeds $100,000, the claim must be accompanied by a certification that the claim is made in good faith, the supporting data are accurate and complete to the best of the certifier's knowledge and belief, the amount requested accurately reflects the amount for which the contractor believes the government is liable, and the certifier is authorized to bind the contractor. *Taj Al Safa Company*, ASBCA No. 58394, 13 BCA ¶ 35,278 at 173,158; *Engineered Demolition, Inc.*, ASBCA No. 54924, 06-1 BCA ¶ 33,125 at 164,151; 41 U.S.C. § 7103(b). A defective certification does not deprive us of jurisdiction, although it must be corrected before we issue a decision. *Southern Automotive Wholesalers, Inc.*, ASBCA No. 53671, 03-1 BCA ¶ 32,158 at 158,998. However, the complete absence of a certification of a claim in excess of $100,000 is a jurisdictional defect that cannot be corrected after an appeal has been taken. *Taj Al Safa*, 13 BCA ¶ 35,278 at 173,162.

It is well established that the CDA does not define the term "claim." The Federal Acquisition Regulation (FAR), however, defines "claim" as follows:

> *Claim* means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

FAR 2.101 (2013). A substantially similar definition is incorporated in the contract's Disputes Clause, FAR 52.233-1.[4]

---

[4] The contract, at page 44, incorporates by reference FAR 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (FEB 2012), which in turn incorporates the Disputes Clause.

4

We apply a common sense analysis to determine whether a contractor's communication constitutes a claim, and look for a "clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987); *Todd Pacific Shipyards Corp.*, ASBCA No. 55126, 06-2 BCA ¶ 33,421 at 165,687. That analysis can be influenced by whether the government treated the submission as a claim. *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1579 n.2 (Fed. Cir. 1992).

Appellant must prove by a preponderance of the evidence that the Board has jurisdiction under the CDA to entertain its appeal. *Parsons Global Services, Inc.*, ASBCA No. 56731, 11-1 BCA ¶ 34,632 at 170,653. We conclude, for the following reasons, that appellant has failed to sustain its burden of proof.

The record does not demonstrate a "clear and unequivocal" statement giving the CO adequate notice that a claim is being submitted, or of the basis for and amount of the claim. The parties' communications consistently used non-claim language such as "modification request" or "adjustment request" to describe the contractor's submission. On the date appellant filed its notice of appeal, the government was reviewing the issues raised in BNLS's 3 March 2014 email, and had requested a letter explaining how the amounts were calculated and "why you believe it is a reasonable request, compared to your proposal" (mot., ex. G-1 at 13). Nor had BNLS claimed a sum certain. As noted above, BNLS's submissions contain listed dollar amounts, some of which have changed and some of which appear to overlap, and lack a bottom line claim amount in a sum certain. Thus the amount claimed cannot be calculated with reasonable effort so as to satisfy the sum certain requirement. *See Madison Lawrence, Inc.*, ASBCA No. 56551, 09-2 BCA ¶ 34,235 at 169,207.

To the extent appellant's claim exceeds $100,000, it must be certified at the time of submission to the CO for decision. Appellant contends that at the time it submitted its "claims" to the CO, they were an aggregation of individual claims none of which exceeded $100,000, so certification was not required at that time. Case law is clear that the question whether two or more separate claims, or only one claim fragmented into pieces, exist is determined by assessing whether the claims are based on the same or related set of operative facts. *See, e.g., Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990). If the court will have to review the same or related evidence to make its decision, then only one claim exists. *Id.* The Board does not find it necessary to decide this issue at this time, given its decision that the complete lack of a claim submission deprives it of jurisdiction. If appellant submits its claim(s), in a sum certain, to the CO for a final decision, it can determine at that time which of its claims require certification.

5

Finally, BNLS has requested additional relief with respect to the death of one of its drivers and the loss of a vehicle. This forum does not undertake investigations. Nor can we award compensation for loss of life or even loss of a vehicle unless there is a contractual basis for doing so. Under the CDA, our jurisdiction to grant relief is limited to relief arising under or relating to the contract. 41 U.S.C. §§ 7101-7109.

## CONCLUSION

The appeal is dismissed for lack of jurisdiction. BNLS may submit a claim or claims in a sum certain to the CO, and must include a CDA certification for each claim in excess of $100,000. If the CO denies the claim, or fails to act so that a deemed denial may lie, BNLS may file a timely appeal to this Board within 90 days of receipt of the decision, or within one year of receipt of the decision to the U.S. Court of Federal Claims.

Dated: 13 August 2014

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59205, Appeal of Bizhan Niazi Logistic Services Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals